**McGLOTHLIN et ux. v. SCOTT.**

No. 1304—5800.

Commission of Appeals of Texas, Section B.

April 21, 1932.

C. A. Wright, of Fort Worth, for plaintiffs in error.

Mayer & Rowe and S. C. Rowe, all of Fort Worth, for defendant in error.

RYAN, J.

This suit is by W. P. McGlothlin and wife to set aside a sheriff's sale and deed to certain property in the city of Fort Worth because of certain irregularities therein, in connection with gross inadequacy of consideration of the sale.

The sheriff's sale was made by virtue of an order of sale issued on April 3, 1924, under a judgment recovered by J. P. Scott against W. P. McGlothlin, on July 13, 1922, for $3,132.48 and interest from that date, which judgment foreclosed a mortgage lien on said property as against McGlothlin and wife.'

No order of sale or other form of execution issued until April 3, 1924, at which time the judgment had become dormant.

At said sheriff's sale on May 6, 1924, J. P. Scott bid $1,500 (of which $54.10 was applied to costs of court and the balance credited on the judgment), and on such bid the sheriff executed deed to him.

At different times, subsequent to the rendition of the judgment and before issuance of the order of sale, McGlothlin paid various sums of money as credits on said judgment, aggregating $790—the last payment of $250 was made on February 24, 1923.

An abstract of said judgment issued on January 10, 1925, was recorded and indexed in the record of judgments of Tarrant county, on January 12, 1925.

On February 13, 1926, J. P. Scott for a consideration of $500 assigned said judgment to W. Q. Seale; the assignment contains the following clause: "Judgment bears credit of $1500.00 by sale of house and lot which is not hereby transferred."

On February 15, 1926, Seale, for a recited consideration of $10, released said judgment unto McGlothlin and wife only and in so far as it might create a lien or claim upon certain described other and different tracts of land in Dallas and Tarrant counties, but except as to such last-named lands, the release was intended as a partial release only and not in any way to affect any other liens created "by virtue of said judgment."

It appears from the evidence of McGlothlin that he owned other lands in Tarrant and Dallas counties which were incumbered to. secure a lien thereon; that he was unable to

pay that indebtedness or the interest thereon, was threatened with foreclosure thereof, and desired to refinance and renew the loan thereon, but the parties to whom he applied for that purpose refused to approve his title unless some disposition were made of the abstracted Scott judgment. In this condition of affairs McGlothlin sought to have the purported judgment lien of Scott released, which was refused. He then negotiated for a sale of the judgment, and Scott proposed to sell the unpaid part of the judgment for $500.

McGlothlin testified: "And I said I haven't got any money and if you will agree to sell that judgment for $500.00 I will go to Dallas tomorrow and see if I can get some one to buy it, * * * and then I went to Dallas to see Mr. Seale, and told Mr. Seale the shape that I was in, and he said, 'I will consult my attorney and see what I can do.' Mr. Seale had his attorney to come to Fort Worth and examine the records, and he drew up a transfer of the judgment. * * * Mr. Seale and myself went to Mr. Scott's office, and I introduced Mr. Seale to Mr. Scott. * * * Mr. Seale handed Mr. Scott this transfer. He said, 'Take it to Mr. Booth and have him approve it, and if he will approve it, I will sign it.' And Mr. Seale and I went back to Mr. Booth's office and Mr. Booth was not in, and Mr. Seale and I waited on him a while; in the meantime, back at the office, Mr. Seale said: 'I will leave a check here for $500.00 to be turned over to you, in case Mr. Booth approves this transfer,' and Mrs. Scott wrote the check for Mr. Seale and Mr. Seale signed and delivered the check to me, and I was to give it to Mr. Scott after he signed the transfer, and then we went back to Mr. Booth's office, and Mr. Booth was not in, and Mr. Seale went on his way. I went out for a while, and I came back, and Mr. Booth was in his office, and I gave the transfer to Mr. Booth and Mr. Booth looked it over, and picked up his pen and wrote on there, 'There is a credit of $1,500.00 by sale of land which is not hereby transferred.' He said, 'Take that back to Mr. Scott, and have him call me over the telephone.' * * * I went down to Mr. Scott's office and gave it to him, and he looked at it, and he gave it to his wife. * * * Mrs. Scott suggested to Mr. Scott that he get in the car and go to the office and have Mr. Booth explain it, and Mr. Scott and I got into the car together, and we went up to Judge Booth's office, and I stayed in the front office, and he went back into the back office where Mr. Booth and Miss Mamie Woods were, and they talked back there for a few minutes, and I heard him say something about 'all right,' and I got up and walked in there, and when I went in there they had erased the words 'by sale of land' and had written the words 'by sale of house and lot,' and Mr. Scott signed it, and Miss

Mamie took his acknowledgement. I gave Mr. Scott the check, Mr. Seale's check. They gave me the transfer, and Mr. Scott turned to Mr. Booth and said, 'Now, what about this check?' Judge Booth said, 'This check is all right; I know Mr. Seale.' * * * I took the transfer and carried it to Mr. Seale. * * * When Mr. Seale and his attorney and I went down to Mr. Scott's office, Mr. Seale went in, but Mr. Seale's attorney stayed out in the car. The attorney for Mr. Seale went down to the place of business of Mr. Scott, and remained out in the car and Mr. Seale and I went in and Mr. Seale talked to him about that. * * * I did not write the transfer and I did not see it when it was written. Mr. Seale and his attorney already had it prepared when they came over here and brought it with them. I met them at the court house steps and then we drove down there in the car."

It appears from the record that Seale is the brother-in-law of McGlothlin, and that as a result of Seale's release to McGlothlin the latter was in position to and did refinance his loan on the Dallas and Tarrant county lands.

Seale furnished McGlothlin with the money which secured the assignment from Scott on the solicitation of McGlothlin and thereby Scott lost whatever right he had to enforce his judgment for the unpaid portion thereof.

With knowledge of the existence of the judgment as well as with knowledge that the property had been sold at sheriff's sale, McGlothlin worked up the transaction by which his brother-in-law purchased the large deficiency in the judgment, for $500, and thus gained a distinct advantage—Scott lost whatever right he had to enforce or revive his judgment for the unpaid part thereof. There is no evidence of fraud or bad faith on the part of Scott, shown in the record.

We are of the opinion that under the facts stated, McGlothlin waived the irregularities in the sheriff's sale, complained of, and that every essential of estoppel as to him appears in the case.

It would be inequitable to allow McGlothlin, after availing himself of the benefits of the transaction with Seale, to repudiate it so far as it imposed an obligation upon him, by claiming that the sheriff's sale is ineffective, when he brought about a sale to his brother-in-law of the deficiency portion of the judgment, resulting in advantage to him and which he seeks to retain—all to the disadvantage of Scott, the judgment creditor. Doty v. Barnard, 92 Tex. 104, 47 S. W. 712; Mayer v. Ramsey, 46 Tex. 371; 17 Tex. Jur. p. 128.

We are of opinion that the Court of Civil Appeals, under the above view of the case, correctly rendered judgment for Scott, and

we therefore recommend that its judgment be affirmed.

**CURETON, C. J.**

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.